UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAWRENCE A. MANCINI and
DEBORAH A. MANCINI,

                              **Plaintiffs,**

   -against-                                       08-CV-933

CSX TRANSPORTATION, INC.,
CAROL ANN ASHWOOD, and
RICHARD J. KETTERER

                              **Defendants.**
_____

THOMAS J. McAVOY,
Senior United States District Judge

## DECISION & ORDER

**I.  INTRODUCTION**

     Plaintiffs commenced this action pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, and New York state common law asserting claims against Defendants arising from an automobile accident on December 11, 2007. There are several motions for summary judgment presently pending in this matter. The Court will address the motions *seriatim.*

**II.  STANDARD OF REVIEW**

     The Court will apply the well-known standard for deciding a summary judgment motion brought pursuant to Fed. R. Civ. P. 56. That standard need not be repeated in full.

1

Suffice it to say that the Court may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003).

> The function of the district court in considering the motion for summary judgment is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried.  Assessments of credibility and choices between conflicting versions of events are matters for the jury, not for the court on summary judgment.

Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 558 (2d Cir. 2001).

In reviewing the motions for summary judgment, the Court will strictly apply the dictates of the Northern District's Local Rules.  See Walsh v. City of Kingston, 2010 WL 681315, at *2 (N.D.N.Y. Feb. 23, 2010)("The Local Rules of the Northern District provide a mechanism for the efficient resolution of summary judgment motions.").  In doing so, the Court will not consider memoranda of law that are in excess of the Local Rule page limitation and will not search the record for evidence that is not specifically cited ("incorporation by reference" of a deposition transcript is not a specific citation).  See N.D.N.Y. L.R. 7.1(a)(1)("No party shall file or serve a memorandum of law that exceeds twenty-five (25) pages in length, unless that party obtains leave of the judge hearing the motion prior to filing.")(emphasis in original); N.D.N.Y. L.R. 7.1(a)(3)("The Court shall not consider any papers required under this Rule that are . . . not in compliance with this Rule unless good cause is shown."); N.D.N.Y. L.R. 10.1 (prescribing the form of papers); see also Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002)("We agree with those circuits that have held that FED. R. CIV. P. 56 does not impose an

obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")(citations omitted); Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000)(The Local Rules require the parties "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court "is not required to consider what the parties fail to point out.")(internal quotation marks and citations omitted); Riley v. Town of Bethlehem, 5 F. Supp.2d 92, 93 (N.D.N.Y.1998)(By "providing precise citations to the record where the disputed [or undisputed] facts are located, both parties and the Court can move immediately to the gravamen of the case; absent this forced focus, the parties' briefs can remain, as is often the case, as 'two ships passing in the night'. . . . If the facts supporting the arguments are in the record, counsel should be able to cite to them." ).

## III.   BACKGROUND

Unless indicated otherwise, the following facts are not in dispute.

Plaintiff Lawrence Mancini ("Plaintiff") was employed by CSX Transportation, Inc. ("CSXT") on December 11, 2007 as a train conductor. His home terminal was in Watertown, New York. Plaintiff's job assignment that day consisted of delivering rail cars to a rail yard in Carthage, New York. He was working with another CSXT employee, Walter Weidner ("Weidner"), who was the train engineer.

After delivering the rail cars to Carthage, New York, Plaintiff lapsed time[1] in Calcium, New York at approximately 9 p.m. The CSXT Trainmaster, Defendant Richard T. Ketterer ("Ketterer"), knowing that Plaintiff would lapse time in Calcium, had previously

---

[1] Pursuant to federal regulations, a conductor must stop operation of the train at the end of a twelve (12) hour shift. This is referred to as "lapse time" or as being "outlawed."

3

telephoned the CSXT dispatcher in Albany, New York and asked that a Quad A[2] van and driver be dispatched to transport Plaintiff and Weidner to their home terminal. When Plaintiff stopped the train and there was no van to transport him and Weidner, he contacted the dispatcher. The dispatcher told Plaintiff that the Quad A driver could not find Calcium and another driver was dispatched, but that it would take "hours" for the van to arrive.[3] Although Plaintiff and Weidner could have waited in the heated-cab of the train for the Quad A van, there was some concern that the road conditions would deteriorate during the wait.[4] Weidner called Ketterer for a ride back to the terminal. Because Plaintiff, as the conductor, was in charge of the train and its crew (Weidner and himself), an inference can be drawn that Weidner called Ketterer with Plaintiff's consent or at Plaintiff's instruction. In the previous five years, Plaintiff had taken rides back to his terminal from Ketterer approximately twenty (20) times.

Ketterer used his 2007 Chevrolet Colorado extended-cab pickup truck to transport Plaintiff and Weidner.[5] When Ketterer arrived at the train in Calcium, Weidner got into the front passenger's seat and Plaintiff got into the rear "jump seat." In the jump seat, Plaintiff's legs straddled the back of Weidner's seat. Plaintiff had ridden in the rear jump seat of Ketterer's pickup truck once or twice before December 11th. The owner's manual

---

[2] Quad A is a transportation company with a contract with CSXT for the transportation of crew members.

[3] Apparently, the second driver was also having trouble finding the location in Calcium.

[4] It was raining that night, and the temperature was near freezing.

[5] Ketterer asserts that when Weidner called and requested transportation, Ketterer could hear Plaintiff yelling "bring the Chevy" in the background. Ketterer also has a smaller pickup truck that he sometimes used for transporting employees.

4

for the 2007 Chevrolet Colorado pickup truck contains no weight restrictions or warnings against adults riding in the rear jump seat. Ketterer checked to make sure that the passengers had their seatbelts on, and then left.

During the return trip, a van in front of Ketterer stopped in the line of traffic waiting to make a left turn on LeRay Street in Watertown, New York. Ketterer contends that when he saw the van, he pumped his breaks on and off to insure that he did not start to slide, and then brought his vehicle to a complete stop about five (5) to seven (7) car lengths behind the van.[6] Ketterer further contends that, approximately 15-30 seconds after he came to a stop, he saw in his rear-view mirror the headlights of an approaching vehicle. When it appeared to Ketterer that the vehicle would strike Ketterer's vehicle, Ketterer took his foot off of the bake to lessen the impact, braced himself and slid down slightly in his seat, and attempted to yell a warning to his passengers. However, he contends that he was unable to yell a warning because the vehicle struck Ketterer's vehicle a second or two from the time Ketterer realized that a collision was imminent.

The rearward approaching vehicle was operated by Defendant Carol Ann Ashwood ("Ashwood"). Ashwood contends that, at the time, it was dark and raining very hard. She asserts that she did not see break lights from Ketterer's vehicle until Ketterer abruptly stopped in the line of traffic whereupon she collided into the rear of Ketterer's pick-up truck.

There is no dispute that, prior to the impact, there was no warning of the impact and no noise such as screeching brakes or a horn. Plaintiff asserts that he was severely

---

[6] Plaintiff testified that Ketterer stopped two (2) car lengths behind the van.

5

injured by the collision and permanently disabled from his railroad employment.

Following a police investigation, Ashwood was arrested and ticketed for aggravated unlicensed operation of a motor vehicle, operating an uninsured vehicle, following too closely, having expired insurance, and operating an uninspected vehicle. She was convicted of violating N.Y. Vehicle and Traffic Law section 511-a, facilitating aggravated unlicensed operation of a motor vehicle in the third degree.

## IV. DISCUSSION

### a. Plaintiff's motion for Partial Summary Judgment against Defendant Ketterer

Plaintiff moves for partial summary judgment on the issue of liability against Defendant Ketterer [dkt. # 30], contending that Ketterer was negligent in (1) failing to warn Plaintiff of the impending crash, and (2) allowing Plaintiff to ride in the jump seat that lacked "lumbar, upper torso, neck, and head support and, so, did not properly support Mr. Mancini during the crash." Plt. Mem L., dkt. # 30, p. 4.

On the "failure to warn of the impending crash" claim, the motion must be denied. Viewing the facts in the light most favorable to Ketterer (the non-movant on this motion), a question of fact exists as to whether Ketterer was confronted with an emergency situation that occurred so spontaneously that he was prevented from issuing a warning. See Caristo v Sanzone, 96 NY2d 172, 174 (2001)(The emergency doctrine "'recognizes that when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration, or causes the actor to be reasonably so disturbed that the actor must make a speedy decision without weighing alternative courses of conduct, the actor may not be negligent if the actions taken are reasonable and prudent

in the emergency context,' provided the actor has not created the emergency.")(quoting Rivera v New York City Tr. Auth., 77 NY2d 322, 327 (1991)).

The second theory – that Ketterer was negligent for allowing Plaintiff to ride in the unsafe jump seat - is actionable only as a failure to warn theory. See Higgins v. Mason, 255 N.Y. 104, 110 (1930)(The owner of a vehicle is liable for injuries to guests caused by a defective condition of the vehicle only if the owner "*knew* of the dangerous condition; *realized* that it involved an unreasonable risk; *believed* that the guests would not discover the condition or realize the risk; and failed to warn them of the condition and the risk involved.")(emphasis in original); 8B N.Y. Jur. 2d Automobiles § 1200 (West. 2010)("Where the plaintiff alleges that the accident was due to the defective condition of the defendant's motor vehicle, he or she must prove such fact and that the defendant knew or should have known of such defective condition and the danger it presented.").

Assuming, *arguendo*, that competent evidence of the dangerousness of the seat exists,[7] there is no evidence that Ketterer was aware of the condition. The owner's manual contains no warning, and there is no evidence of recalls or notices from the manufacturer, the government, or consumer safety groups regarding the safety of adults riding in the jump seat. Although there is some evidence that the CSXT employees' union representative sent a letter to a CSXT official complaining that Ketterer's vehicle lacked "adequate and proper seating" (discussed *infra*), there is no evidence that anyone from CSXT discussed this issue with Ketterer. While there is some evidence that CSXT employees complained to Ketterer that the rear jump seat was "uncomfortable," there is no

---

[7]Ketterer objects to consideration of Plaintiff's expert report because it is unsworn.

evidence that any complaints concerning the seat's safety were communicated to Ketterer or that he had any reason to doubt the safety of adults riding in the jump seat.

Furthermore, Plaintiff had ridden in the vehicle approximately 20 times before the accident, one (1) or two (2) of which he rode in the jump seat, yet he had never taken exception to the safety of riding on the jump seat and willingly sat in the jump seat on the night in issue even though he could have waited for a Quad A van. There is no basis to conclude that Ketterer was aware of a dangerous condition in the design of his vehicle, and, thus, there is no basis to conclude that he was negligent for failing to warn of the condition.

Accordingly, Plaintiff's motion against Defendant Ketterer [dkt. # 30] is **DENIED**.

### b.  Plaintiff's motion for Partial Summary Judgment against Defendant Ashwood

Plaintiff moves for partial summary judgment on the issue of liability against Defendant Ashwood [dkt. # 31] because "[e]ither Ashwood was following Ketterer too closely, or she was driving too fast, or she was not paying enough attention. There are simply no genuine issues of material fact as to Ashwood's liability which a fact finder must determine." Pl. Mem. L. p. 4. The Court disagrees.

Under New York law,

> [i]t is well established that when the driver of an automobile approaches another automobile from the rear, he or she is bound to maintain a reasonably safe rate of speed and control over his or her vehicle, and to exercise reasonable care to avoid colliding with the other vehicle. However, a driver also has the duty not to stop suddenly or slow down without proper signaling so as to avoid a collision. A rear-end collision with a stopped "or stopping" vehicle creates a prima facie case of liability with respect to the operator of the rearmost vehicle, thereby requiring that operator to rebut the inference of negligence by providing a nonnegligent explanation for the

> collision. One of several nonnegligent explanations for a rear-end collision is a sudden stop of the lead vehicle.

Chepel v. Meyers, 306 A.D.2d 235, 236-37 (2nd Dept. 2003)(internal citations and quotation marks omitted).

Ashwood testified that "it seemed" that Ketterer was slowing down "and then stopped abruptly in front of me . . . ." Ashwood EBT tr. 114. This is sufficient to create a question or material fact defeating Plaintiff's motion. Accordingly, Plaintiff's motion against Ashwood [dkt. # 31] is **DENIED.**

### c. **Defendant CSXT's Motion for Summary Judgment against Defendant Ashwood, Plaintiff, and Co-Defendants**

Defendant CSXT moves for summary judgment against Defendant Ashwood (seeking a "holding that defendant Ashwood was negligent as a matter of law"); against Plaintiff (seeking dismissal of the FELA claim); and against all co-defendants (seeking dismissal of the cross-claims against CSXT). Dkt. # 36.

#### 1. Motion Against Defendant Ashwood on Negligence

CSXT contends that it is entitled to judgment against Ashwood on its cross-claim for indemnification and contribution on the theory that Ashwood was negligent as a matter of law because she operated a motor vehicle that rear-ended a stopped motor vehicle. As indicated above, however, a question of fact exists as to whether Ketterer's vehicle was stopped for a period of time before the collision (as he contends), or whether Ketterer abruptly stopped the vehicle (as Ashwood contends). While Ashwood's deposition testimony may have been somewhat contradictory on the issue of how long Ketterer's vehicle was stopped prior to impact, issues of credibility and determination of disputed

9

facts are for the jury to resolve.

Further, despite CSXT's citation to cases finding negligence as a matter of law when a driver of the rearward vehicle pled guilty of following too closely in violation of N.Y. Vehicle and Traffic Law § 1129, Ashwood was convicted of violating N. Y. Vehicle and Traffic Law § 511-a.  While she was ticketed for, *inter alia*, following too closely in violation of N.Y. Vehicle and Traffic Law § 1129, the ticket is simply an accusatory instrument which, in itself, is insufficient to satisfy CSXT's burden of establishing entitlement to summary judgment.   Accordingly, this portion of the motion is denied.

### 2. Motion Against Plaintiff

CSXT also contends that it is entitled to summary judgment dismissing Plaintiff's FELA claim because it provided Plaintiff with a safe place to work, and because any injury to Plaintiff was proximately caused by Ashwood's negligence which was unforeseeable by CSXT.

The FELA provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."  45 U.S.C. § 51.  The FELA was intended as a remedial statute for railroad workers injured while on the job.

> In order to further FELA's humanitarian purposes, Congress "did away with several common-law tort defenses that had effectively barred recovery by injured workers." Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 542 (1994). "Specifically, the statute abolished the fellow servant rule, rejected the doctrine of contributory negligence in favor of that of comparative negligence, and prohibited employers from exempting themselves from FELA through contract; a 1939 amendment abolished the assumption of risk defense." Id. at 542-43 (citing 45 U.S.C. §§ 51, 53-55).

Campbell v. Consolidated Rail Corp., 2008 WL 3414029, at * 3 (N.D.N.Y.  Aug. 8, 2008).

"A railroad may be liable under FELA for failure to provide a safe workplace 'when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees.'" Syverson v. Consolidated Rail Corp., 19 F.3d 824, 826 (2d Cir.1994)(quoting Gallose v. Long Island R.R. Co., 878 F.2d 80, 84-85 (2d Cir.1989)).  However, the Supreme Court has "insisted that FELA 'does not make the employer the insurer of the safety of his employees while they are on duty.  The basis of his liability is his negligence, not the fact that injuries occur.'" Gottshall, 512 U.S. at 543 (quoting Ellis v. Union Pacific R. Co., 329 U.S. 649, 653 (1947)).   "Significantly, the essential element of reasonable foreseeability in FELA actions requires proof of actual or constructive notice to the employer of the defective condition that caused the injury." Campbell, 2008 WL 3414029, at * 4.

> Under FELA, "the case must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff." Syverson v. Consol. Rail Corp., 19 F.3d 824, 828 (2d Cir.1994) (citing Gallick v. Baltimore and O.R.R., 372 U.S. 108, 120-21 (1963)). However, while FELA plaintiffs are entitled to have reasonable inferences drawn in their favor from the facts, they may not survive a motion for summary judgment when the inferences they ask a court to draw are mere possibilities. See Connors v. Consol. Rail Corp., No. 90-CV-464, 1993 WL 169646, at *8 (N.D.N.Y. May 19, 1993) (citing Gibson v. American Broadcasting Cos. Inc., 892 F.2d 1128, 1132 (2d Cir.1989)).

Id.

Viewing the facts in the light most favorable to Plaintiff, there is a question of fact as to whether Ketterer, CSXT's agent, operated his vehicle in a negligent fashion on the night in question.  As indicated above, Plaintiff asserts that Ketterer was negligent for, *inter alia*, failing to yell a warning before impact.

11

Further, Plaintiff has presented evidence that, in May of 2007, a union representative sent a letter to CSXT's division manager relaying complaints received from CSXT employees regarding Ketterer's use of his private vehicle to transport train crews. The letter states that

> I have been receiving complaints from crews in the Watertown, N.Y. terminal of CSX due to the local supervisor taking it upon himself to transport crews in his private vehicle. This rather than wait for the availability of the Quad A van service that is contracted to perform such duties.
>
> The problem is cited due to the type of vehicle owned by the trainmaster, R.J. Ketterer, being a pickup truck without adequate and proper seating for train crews. Also the question of insurance levels maintained by the supervisor in the transportation of CSX personnel being adequate should an incident occur.
>
> The crews are being put in a compromising situation since refusal to accept the ride in lieu of proper transportation services could be viewed as insubordination by an unreasonable person.

Murphy 5/3/07 Ltr to Braman.

Although Plaintiff admitted that, prior to the accident, he never took exception to Ketterer's operation of his vehicle; that he never complained to CSXT regarding Ketterer transporting him; and that he had not taken any exception to riding in Ketterer's vehicle, the issue on this motion is whether CSXT knew, or should have known, of a potential hazard in the workplace yet failed to exercise reasonable care to inform and protect its employees. From the contents of the union representative's letter, a reasonable fact finder could conclude that the employer was on notice of a potential hazard occasioned by the use of Ketterer's pickup truck to transport train crews because the pickup truck was without "adequate and proper seating." From this, a fact finder could conclude that the employer failed to exercise reasonable care by not investigating the circumstances

12

surrounding the "adequate and proper seating" of Ketterer's pickup truck, or mandating that crews wait for a Quad A van.

While CSXT did offer Plaintiff a Quad A van ride on the night in issue, the union representative's letter provides some evidence that the employer received notice that employees felt compelled to accept rides in Ketterer's vehicle even though the vehicle lacked "adequate and proper seating." If Plaintiff is able to establish that the seating was unsafe, then he may be able to establish a FELA claim. Accordingly, the motion in this regard is denied.

### 3. Motion Against All Cross-Claimants

CSXT moves to dismiss all cross-claims brought against it by co-defendants on the theory that "CSXT was not negligent as a matter of law." CSXT provides no further argument on this portion of its motion. For the reasons discussed above, a reasonable fact finder could conclude that CSXT, or its agent, was negligent. Accordingly, this portion of the motion is denied.

### d. Defendant Ketterer's Motion for Summary Judgment against Plaintiff and Defendant Ashwood

Ketterer moves for summary judgment seeking to dismiss Plaintiff's complaint and any cross-claims against him, or, in the alternative, judgment as to Ashwood's liability. Dkt. # 39.

### 1. Against Plaintiff / Dismissal of Cross-Claims

Ketterer seeks a judgment dismissing Plaintiff's claims against him and any cross-claims because: (1) Plaintiff has failed to establish that he suffered a "serious injury" pursuant to New York Insurance Law § 5102(d); (2) Plaintiff cannot establish that Ketterer

13

was negligent; and (3) if Ketterer was negligent, Plaintiff cannot establish that this negligence was a proximate cause of injuries sustained by Plaintiff.

On the first issue, Ketterer has failed to meet his prima facie burden of showing that Plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102(d) as a result of the accident. See Toure v. Avis Rent A Car Sys., 98 N.Y.2d 345, (2002); Gaddy v. Eyler, 79 N.Y.2d 955, 956-957 (1992); see also Meyer v. AFGD, Inc., 140 F. Supp.2d 179, 182 (N.D.N.Y. 2001)("When seeking summary judgment, a defendant must make a prima facie showing that the plaintiff has not suffered a serious injury.")(citing Gaddy, 79 N.Y.2d 955). Ketterer has simply alleged in his Memorandum of Law that Plaintiff did not suffer a serious injury [dkt. # 39-10], but his Statement of Material Facts is silent as to any injury that Plaintiff sustained. [Dkt. # 39-11]. Arguments contained in memoranda of law are not evidence. Because Ketterer failed to meet his initial burden on this issue, the motion on this ground is denied. [8]

As to whether Ketterer was negligent for failing to warn of the impending crash, or whether such a warning, if given, could have averted Plaintiff's injuries and thus a proximate cause of the injuries, these are questions of fact that must be decided by a jury. Consequently, the motion in this regard is denied.

However, Plaintiff has failed to present sufficient evidence supporting the theory that

---

[8] If Ketterer had done slightly more than simply allege that Plaintiff failed to sustain a serious injury, the motion, on the present record, might have been successful. The only "evidence" that Plaintiff submits of the injuries sustained from the accident (at least the only argument presented in Plaintiff's 38 page Memorandum of Law in Opposition to Ketterer's motion) is that Ketterer heard Plaintiff "yell" and "scream" about the pain Plaintiff experienced. Plf. Mem. L. [dkt. # 45] p. 26. Had Ketterer met his initial burden, this "evidence" would have been insufficient. See Meyer, 140 F. Supp.2d at 182 ("Once the defendant has [meet his prima facie burden], the burden shifts to the plaintiff to present admissible evidence sufficient to raise a genuine issue of fact as to whether the injuries are serious. To meet this burden, the plaintiff must come forward with more than conclusory assertions tailored to meet statutory requirements.")(citations and interior quotation marks omitted).

14

Ketterer was negligent for failing to advise of the purported unsafe condition of riding in the jump seat. As indicated above, there is no evidence that anyone questioned Ketterer about the safety of riding in the jump seat, and Plaintiff has failed to adduce sufficient evidence to put a reasonable person on notice that there was a safety concern with the jump seat. Thus, there is insufficient evidence to support the theory that Ketterer had a duty to warn of the dangers of riding in the jump seat. Accordingly, Ketterer's motion in this regard is granted, and Plaintiff's claim against him premised on the theory that Ketterer was negligent for failing to warn Plaintiff of the dangers of riding in the jump seat is dismissed.

### 2. Against Ashwood

Because Ashwood asserts that Ketterer came to an abrupt stop in front of her vehicle thereby causing the collision, Ketterer's motion seeking a judgment of liability against Ashwood is denied.

## V. CONCLUSION

For the reasons discussed above,

Plaintiff's motion for summary judgment against Defendant Ketterer [dkt. # 30] is **DENIED**;

Plaintiff's motion for summary judgment against Defendant Ashwood [dkt. # 31] is **DENIED;**

Defendant CSXT's motion for summary judgment [dkt. # 36] is **DENIED;**

Defendant Ketterer's motion for summary judgment [dkt. # 39 ] is **GRANTED IN PART and DENIED IN PART**. The motion is granted dismissing that portion of Plaintiff's

negligence claim premised upon the theory that Ketterer was negligent for failing to warn of an unsafe condition (unsafe rear jump seat) in Ketterer's vehicle. The motion is denied in all other respects.

**IT IS SO ORDERED**

DATED: April 1, 2010

Thomas J. McAvoy
Senior, U.S. District Judge