**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LAWRENCE A. MANCINI and**
**DEBORAH A. MANCINI,**

                                        **Plaintiffs,**

     **-against-**                                        **08-CV-933**

**CSX TRANSPORTATION, INC.,**
**CAROL ANN ASHWOOD, and**
**RICHARD J. KETTERER,**

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                              **DECISION & ORDER**

**I.  INTRODUCTION**

        This case arises from an automobile accident that occurred while the Plaintiff was

on duty during his railroad employment.  See Mancini v. CSX Transp., Inc.,

2010 WL 1268021 (N.D.N.Y. April 01, 2010).  Familiarity with the background facts of the

case, set forth in the April 2, 2010 Decision and Order, is presumed.  Id.  For purposes of

the instant motion it is sufficient to understand that Plaintiff Lawrence A. Mancini

("Plaintiff"[1]) has sued: (1) his employer, CSX Transportation, Inc. ("CSX"), pursuant to the

Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq. alleging that the

_____

        [1]Plaintiff's wife, Deborah A. Mancini, has brought derivative claims arising from her husband's
accident and injuries.

employer failed to provide a safe place to work *(i.e.* failed to provide a safe vehicle to transport him); (2) the driver & owner of the vehicle in which Plaintiff was riding, co-worker Richard T. Ketterer ("Ketterer"), pursuant to state common law alleging that Ketterer was negligent in operating his vehicle; and (3) the driver of the vehicle that struck Ketterer's vehicle from the rear, Carol Ann Ashwood ("Ashwood"), pursuant to state common law alleging that Ashwood was negligent in operating her vehicle.  Defendant CSX has also brought cross-claims against Ketterer and Ashwood seeking contribution and/or indemnity in the event a judgment is rendered against it.

According to the parties, at a settlement conference with the Hon. Andrew T. Baxter, United States Magistrate Judge, Plaintiffs and Ashwood and Ketterer indicated an intention to settle their claims.  However, counsel for CSX announced that if Plaintiff obtained a judgment against CSX on the FELA claim, CSX would pursue its claims for contribution and/or indemnification against the settling defendants.  The announcement stalled the settlement discussions.  The parties then submitted briefing to the Court addressing the impact that N.Y. Gen. Oblig. Law § 15-108[2] and the FELA will have on the

---

[2]N.Y. Gen Oblig. Law § 15-108 provides in pertinent part:

**(a) Effect of release of or covenant not to sue tortfeasors**. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

**(b) Release of tortfeasor**. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

(continued...)

settlement of the claims between Plaintiff and Ashwood and Ketterer.   Thereafter,

Plaintiffs and Ashwood and Ketterer entered a Stipulation of Settlement which

conditionally settled their claims, see Stip. Settlement [dkt. # 101], and Ashwood and

Ketterer filed a joint motion to dismiss CSX's cross-claims against them. See Joint Mot.

[dkt. #102].  The conditions of the settlement are: (1) that CSX's cross-claims are

dismissed, and (2) the Court uses a *pro tonto* approach to calculate the set-off against

Plaintiff's settlements in the event he recovers against CSX. See  Stip. Settlement.  CSX

has objected to the Court considering the joint-motion, arguing (1) that the conditional

settlement is in violation of N.Y. Gen. Oblig. Law § 15-108(d) because no money has

exchanged hands,[3] and (2) that the motion asks for an advisory opinion.

---

[2](...continued)

**(c) Waiver of contribution**. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.

[3] N.Y. Gen Oblig. Law § 15-108(d) provides:

(d) Releases and covenants within the scope of this section. A release or a covenant not to sue between a plaintiff or claimant and a person who is liable or claimed to be liable in tort shall be deemed a release or covenant for the purposes of this section only if:

    (1) the plaintiff or claimant receives, as part of the agreement, monetary consideration greater than one dollar;

    (2) the release or covenant completely or substantially terminates the dispute between the plaintiff or claimant and the person who was claimed to be liable; and

    (3) such release or covenant is provided prior to entry of judgment.

II.     **DISCUSSION**

    <u>a.</u>     **<u>Justiciable Case or Controversy</u>**

    New York state law applies to CSX's contribution and indemnification claims in this action. <u>See</u> <u>Geraty v. Northeast Illinois Regional, Commuter Corp.</u>, 2010 WL 1292414, at * 3 (N. D. Ill. March 29, 2010)("In a FELA case, the right to contribution among multiple tortfeasors is governed by state law."); <u>see also</u> <u>Fuller v. CSX Transp., Inc.</u>, 2009 WL 36903, at * 2 (N.D.N.Y. Jan. 06, 2009)(applying New York state law to contribution and indemnification third-party claims in a FELA case).  Under New York law, contribution and indemnification claims may be asserted in the same action for which the underlying obligation potentially arises. <u>See</u> N.Y. Practice, Torts § 10:30 ("While technically an action for indemnification does not arise until a party has been forced to pay damages that were caused by someone else, New York law permits the party seeking indemnification to commence an action prematurely, so that all claims can be tried and resolved in a single proceeding.").  Plaintiff and Defendants Ashwood and Ketterer ask for a judicial ruling on the legal viability of CSX's contribution and indemnification claims, and an indication as to how the Court will calculate a set-off if Plaintiff settles with Ashwood and Ketterer and receives a judgment against CSX.  CSX argues that the motion asks for an advisory opinion.

    A federal court may only resolve actual cases or controversies and lacks the power to render advisory opinions on hypothetical or academic disputes.  <u>U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.</u>, 508 U.S. 439, 446 (1993); <u>see</u> <u>Broadview Chem. Corp. v. Lucite Corp.</u>, 417 F.2d 998, 1000 (2d Cir.1969) ("[T]his is not a hypothetical or academic

dispute or a request in the abstract for an advisory opinion, but a definite, concrete controversy of sufficient immediacy to warrant the issuance of a declaratory judgment."). "The real value of the judicial pronouncement - what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion - is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." Hewitt v. Helms, 482 U.S. 755, 761 (1987)(emphasis in original).

The Court will address the joint motion to the extent that it seeks a ruling on concrete controversies of sufficient immediacy such that the settling of the disputes will affect the behaviors of Ashwood and Ketterer toward Plaintiff.   The Court will treat the joint motion as if brought pursuant to Rule 12.

### b.   FELA Liability

The starting point on this motion is CSX's obligation under the FELA.  Pursuant to 45 U.S.C. § 51, the railroad is liable for damages if Plaintiff's "injury . . .  result[ed] in whole or in part from [the railroad's] negligence."  Joint and several liability applies in FELA cases, thereby making the employer responsible for the entirety of the damages caused by it and any other defendants or non-parties that contributed to the injuries. Norfolk & W. Ry. Co. v. Ayers, 538 U.S. 135, 160-163 (2003);  Schadel v. Iowa Interstate R.R., Ltd., 381 F.3d 671, 675-676 (7th Cir. 2004).  Under 45 U.S.C. § 53, that amount is reduced only by the plaintiff's comparative negligence. See Waisonovitz v. Metro-North Commuter R.R., 462 F. Supp.2d 292, 293-94 (D. Conn. 2006)("In furtherance of FELA's humanitarian purposes, Congress abolished the fellow-servant rule, rejected contributory negligence in favor of comparative negligence, and abolished the assumption of risk defense.").  "While

5

the railroad may sue third parties for indemnification and contribution, the railroad's own

responsibility is affected only by the plaintiff's comparative negligence." <u>Krueger v. Soo</u>

<u>Line R.R.</u>, 2005 WL 2234610, at * 1 (E. D. Wis., Sep 12, 2005)(citing <u>Schadel</u>, 381 F.3d at

676**; see also** <u>Ayers</u>, 538 U.S. at 141, 162).

### c.   Contribution and Indemnification Claims Generally

   In <u>Rosado v. Proctor & Schwartz, Inc.</u>, 66 N.Y.2d 21, 24 (1985), the New York

State Court of Appeals explained the "important substantive distinctions between

contribution [as referenced in § 15-108] and indemnity" as follows:

> Basically, in contribution the loss is distributed among tort-feasors, by
> requiring joint tort-feasors to pay a proportionate share of the loss to one
> who has discharged their joint liability, while in indemnity the party held
> legally liable shifts the entire loss to another. Contribution arises
> automatically when certain factors are present and does not require any kind
> of agreement between or among the wrongdoers. Indemnity, on the other
> hand, arises out of a contract which may be express or may be implied in law
> "to prevent a result which is regarded as unjust or unsatisfactory."  Implied
> indemnity is frequently employed in favor of one who is vicariously liable for
> the tort of another, but the principle is not so limited and has been invoked in
> other contexts as well. Nonetheless, "an indemnity cause of action can be
> sustained only if the third-party plaintiff and the third-party defendant have
> breached a duty to plaintiff and also if some duty to indemnify exists between
> them."

> The distinctions between contribution and indemnity take on added
> importance in settlement negotiations. In order to remove a disincentive to
> settlement, the Legislature amended General Obligations Law § 15-108 to
> provide that a settling tort-feasor can neither obtain, nor be liable for, a
> contribution claim. Inasmuch as an entire shifting of the loss to another
> would not act as a disincentive to settlement or necessitate an examination
> of relative degrees of fault, indemnification claims are not barred. A party
> who has settled and seeks what it characterizes as indemnification thus must
> show that it may not be held responsible in any degree. The statutory bar to
> contribution may not be circumvented by the simple expedient of calling the
> claim indemnification.

<u>Id.</u> at 24-25 (internal citations omitted).

### d.      Contribution & N.Y. Gen Oblig. Law § 15-108

Prior to the joint motion being filed, all parties agreed that N.Y. Gen Oblig. Law §
15-108 barred CSX from seeking contribution from Ashwood or Ketterer if these
defendants settled with Plaintiff.  See Def. CSX Mem. L. [dkt. # 90] p. ("CSXT agrees with
the other parties that any contribution claims are barred by operation of New York General
Obligations Law § 15-108(b).").   Now, however, CSX argues that the viability of its
contribution claims, and the impact of N.Y. Gen. Oblig. Law  § 15-108(b), are not
justiciable issues at this time because the parties have not actually consummated a
settlement.

While CSX is correct in its interpretation of N.Y. Gen. Oblig. Law  § 15-108(d), the
issue of whether N.Y. Gen. Oblig. Law § 15-108(b) will bar CSX's contribution claims
against Defendants Ashwood or Ketterer if these defendants settle their claims is an
actual controversy the settling of which "affects the behavior of the defendant[s] towards
the plaintiff."  Hewitt, 482 U.S. at 761.   The Court finds that, upon settlement between
Plaintiff and either Ashwood or Ketterer, CSX's contribution claims against the settling
defendants are barred by operation of N. Y. Gen. Oblig. Law  § 15-108(b).

### e.      Implied Indemnification Generally

Ashwood and Ketterer also argue that CSX has no legally viable claims for
indemnification against  them and, therefore, these claims must be dismissed.  CSX
asserts, however, that it has viable implied indemnification claims against both Ketterer
and Ashwood.  Regardless of whether a settlement is reached between Plaintiff and
Ketterer and Ashwood, the legal viability of the implied indemnification claims is a matter

7

ripe for adjudication.

Implied indemnity is an equitable doctrine recognized in the common law. <u>Gillmore v. Duke/Fluor Daniel et al.</u>, 221 A.D.2d 938, 634 N.Y.S.2d 588 (4th Dept 1995).  "The general rule is that common law indemnity (also called implied indemnity) will arise in favor of one who is compelled to pay for another's wrong."  <u>St. Nicholas Cathedral of Russian Orthodox Church in North America v. Colonial Co-op. Ins. Co.</u>, 2008 WL 787267, at * 2 (March 25, 2008)(citing <u>Margolin v. New York Life Ins. Co.</u>, 32 N.Y.2d 149, 152 (1973)). "Where payment by one person is compelled, which another should have made . . .  a contract to reimburse or indemnify is implied by law."  <u>McDermott v. City of NY</u>, 50 N.Y.2d 211, 217 (1980)).

> "Implied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." <u>Mas v. Two Bridges Assocs. by Nat'l Kinney Corp.</u>, 75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990) (citing <u>McDermott v. City of N.Y.</u>, 50 N.Y.2d 211, 216-17, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980)); <u>accord</u> <u>Hernandez v. GPSDC (N.Y.) Inc.</u>, 2008 WL 220636, at *7 (S.D.N.Y. Jan. 28, 2008).  It is grounded in the "principle that 'every one is responsible for the consequences of his own negligence, and if another person has been compelled . . . to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him.'" <u>Raquet v. Braun</u>, 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997) (quoting <u>Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola</u>, 134 N.Y. 461, 468, 31 N.E. 987 (1892)). Thus, indemnity may be implied "to prevent a result which is regarded as unjust or unsatisfactory" and "is frequently employed in favor of one who is vicariously liable for the tort of another." <u>Rosado v. Proctor & Schwartz, Inc.</u>, 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985) (citations and internal quotation marks omitted). . . .  In general terms, indemnity allows a defendant to recover for a loss occasioned solely "by imputation of law," <u>Mas</u>, 75 N.Y.2d at 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257, that it would otherwise be forced to bear on its own.

<u>Amusement Industry, Inc. v. Stern</u>,  2010 WL 445900, at * 4 (S.D.N.Y. March 1, 2010).

"[A]n indemnity cause of action can be sustained only if the third-party plaintiff and

the third-party defendant have breached a duty to plaintiff and also if some duty to indemnify exists between them." Gillmore v. Duke/Fluor Daniel et al., 221 A.D.2d 938, 634 N.Y.S.2d 588 (4th Dept 1995); see also Westport Marina, Inc. v. Boulay, 2010 WL 1223238, at *11 (E.D.N.Y. March 24, 2010)("Where one party is held liable solely on account of the negligence of another, indemnification applies to shift the entire liability to the one who was negligent.").

Further, "the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee." Monaghan v. SZS 33 Assoc, L.P., 73 F .3d 1276, 1285 (2d Cir.1996) (quoting Trustees of Columbia Univ. v. Mitchell/Giurgola Assoc., 109 A.D.2d 449, 453 (1st Dep't 1985)); see Rosado 66 N.Y.2d 21, 25, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985)(("[C]ommon-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff."). Thus, implied indemnity is not available where the party seeking indemnification was itself at fault in causing the injury or damage upon which it seeks recovery. Boulay, 2010 WL 1223238, at * 11; see Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs., 109 A.D.2d 449, 492 N.Y.S.2d 371, 375 (1st Dep't 1985) ("Since the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine.").

While CSX advances a theory of "tort indemnity" recognized primarily in the federal admiralty common law that assesses indemnity based on a tortfeasor's "active" or "passive" negligence, see In re M/V DG Harmony, 436 F. Supp.2d 660, 665 (S.D.N.Y.

9

2006),[4] the theory nevertheless requires the proposed indemnitee to be free of fault. See

id. ("Where two tortfeasors are both actively negligent, however, they cannot seek tort

indemnity from each other."); In re Am. Exp. Lines, Inc., 568 F. Supp. 956, 964

(S.D.N.Y.1983) ("A party may sue in admiralty for tort indemnity if he is vicariously liable

for the culpable conduct of another, but he may not recover on this theory if he himself has

been guilty of negligence.").

### f.   Indemnity Claim Against Ashwood

Defendant Ashwood was merely a third party driver who collided with the

automobile in which Plaintiff was riding.  Defendant CSX has pointed to no legal duty to

indemnify that existed between Ashwood and CSX.   The indemnity claim against

Ashwood can be dismissed on this basis alone.

 Further,  the implied indemnification claims by CSX would not arise unless the jury

determines that CSX was at fault under the FELA for failing to provide Plaintiff a safe

place to work that caused or contributed to Plaintiff's injuries.  Once such a finding is

---

[4]The Southern District wrote in In re M/V DG Harmony:

Under the general maritime law, tort indemnity is available if "a tort has occurred, and there is great disparity in the fault of the parties." Stanley v. Bertram-Trojan, Inc., 781 F. Supp. 218, 220 (S.D.N.Y.1991). For example, where two parties are at fault, if one party is only "passively negligent" while the other is "actively negligent," the former can seek indemnification from the latter. In re Kreta Shipping, S.A., No. 96 Civ. 1137(KMW), 2000 WL 33249253, at *3 (S.D.N.Y. June 21, 2000) (citing Stanley, 781 F. Supp. at 220).  A party is actively negligent when it creates an unreasonable risk of harm and passively negligent when it merely fails "to discover or remedy a risk created by a joint tortfeasor." Id. Where two tortfeasors are both actively negligent, however, they cannot seek tort indemnity from each other. See Gordon H. Mooney, Ltd. v. Farrell Lines, Inc., 616 F.2d 619, 625 (2d Cir.1980) ("[B]ecause [defendant's] negligence contributed to the loss, [defendant] cannot obtain indemnity[.]"); Stanley, 781 F. Supp. at 220 ("Where joint tortfeasors are actively negligent[,] the law refuses to recognize any disparity in fault that would justify shifting the entire loss onto one of the tortfeasors."); In re Am. Exp. Lines, Inc., 568 F. Supp. 956, 964 (S.D.N.Y.1983) ("A party may sue in admiralty for tort indemnity if he is vicariously liable for the culpable conduct of another, but he may not recover on this theory if he himself has been guilty of negligence.").

10

made, any indemnity claim would be extinguished by virtue of the jury's determination of CSX's actual fault in causing Plaintiff's damages.  Put another way, the finding of FELA fault by CSX is the predicate to an indemnity claim (that is, without finding FELA liability, the indemnity claim is moot), but, the finding of fault under the FELA also negates the implied indemnity claim.  A finding of FELA liability is a finding of active fault, that is, that the employer failed in its non-delagable duty to provide a safe place to work.  It is not a finding of passive fault which assesses damages solely by imputation of law. Therefore, even if the jury were to conclude that Ashwood was 100% responsible for causing the automobile accident (as CSX hypothesizes), the indemnify claim against Ashwood would be negated as matter of law once the jury concluded that CSX was also "at fault" to some degree for causing Plaintiff's injuries by failing to provide Plaintiff a safe vehicle in which to ride. See Gordon H. Mooney, Ltd. v. Farrell Lines, Inc., 616 F.2d 619, 625 (2d Cir.1980) ("[B]ecause [defendant's] negligence contributed to the loss, [defendant] cannot obtain indemnity"); Stanley v. Bertram-Trojan, Inc., 781 F. Supp. 218, 220 (S.D.N.Y.1991) (where active negligence is alleged, plaintiff's success on the merits would defeat claim for tort indemnification).

### g.    Indemnity Claim Against Ketterer

Similarly, an indemnity claim against Ketterer would also be extinguished upon a finding of FELA liability whether or not Ketterer is looked at for his role as the operator or the owner of the vehicle in which Plaintiff was riding.[5]  An FELA finding would inherently be

---

[5]CSX argues that Ketterer wears "two hats"  – (1) the co-employee that operated the vehicle in which Plaintiff was riding and who may have contributed to the accident by his negligence in stopping too abruptly; and (2) the supplier of the vehicle used to transport Plaintiff on the night in issue.

based upon a determination that the employer failed in its non-delagable duty to provide a safe place to work, and, thus, was actively negligent.

In addition, any indemnity claim by CSX against Ketterer for Plaintiff's damages is barred by the FELA. See Waisonovitz v. Metro-North Commuter R.R., 462 F. Supp.2d 292 (D. Conn. 2006)(dismissing third-party indemnification and contribution claims brought by railroad employer against injured-plaintiff's co-employee); Shields v. Consolidated Rail Corp., 1981 U.S. Dist. LEXIS 16734, at *4 (S.D.N.Y. Dec. 16,1981)("To permit Conrail to recover from [a co-employee] indemnification for damages Conrail is forced to pay [the FELA  plaintiffs] would contravene both the FELA and its stated purpose. Such a result cannot be countenanced.").   As the District of Connecticut explained in Waisonovitz, "since the purpose of FELA is to persuade railroad employers to exercise caution in selecting and supervising its employees, to permit an employer to seek indemnification [from a co-employee] would violate the intent of Congress rather than foster it." Waisonovitz, 462 F. Supp.2d at 294 (citations and internal quotation marks omitted).

Moreover, numerous courts have interpreted Sections 55[6] and 60[7] of the FELA, and the public policy underlying the FELA, as barring third-party contribution and indemnity claims by railroads against co-employees of FELA plaintiffs.  In re National Maintenance & Repair, Inc., 2010 WL 456758, *2-*3 (S.D. Ill. Feb 03, 2010);  Waisonovitz, 462 F.

---

[6]Section 55 of the FELA provides that, "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Chapter, shall to that extent be void." 45 U.S.C. § 55.

[7]Section 60 of the FELA provides that, "[a]ny contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void." 45 U.S.C. § 60.

Supp.2d at 295; <u>Shields</u>, 1981 U.S. Dist. LEXIS 16734, at *5 - *6; <u>Illinois Central Gulf R.R.</u>

<u>Co. v. Haynes</u>, 592 So.2d 536, 540 (Ala.1991); <u>Stack v. Chicago, Milwaukee, St. Paul and</u>

<u>Pacific R.R. Co.</u>, 94 Wash.2d 155, 615 P.2d 457 (Wash. 1980); see <u>Henson v. Baltimore</u>

<u>& Ohio R.R. Co.</u>, 1985 U.S. Dist. LEXIS 21048, at *15 (W.D. Pa. 1985).[8]

For these reasons, CSX's third-party indemnification claim against Ketterer is

dismissed.

### h.    Set-Offs

Finally, the Court turns to the set-off that CSX may obtain if the other defendants

settle their claims with Plaintiff.  Like the question regarding the impact of N. Y. Gen.

Oblig. Law  § 15-108(b) on the contribution claims, the question of a set-off presents an

actual controversy that affects the behavior of the defendants towards the plaintiff. <u>Hewitt</u>

<u>v. Helms</u>, 482 U.S. at 761.  Consequently, the Court will address the issue.

The Seventh Circuit addressed the issue of a set-off in an FELA case in <u>Schadel v.</u>

<u>Iowa Interstate R.R., Ltd.</u>, 381 F.3d 671 (7th Cir. 2004), finding first that federal law

determines the effect of settlements with other tortfeasors on a FELA recovery.  <u>Schadel</u>,

381 F. 3d at 676.   The Seventh Circuit reasoned that, in order to give full effect to the

FELA's policy underpinning that an employee is entitled to recover the full amount of his

---

[8]After finding that the railroad employer's third-party complaint against a co-employee fell within the meaning of "device" under the FELA provisions, the District Court in <u>Henson</u> wrote:

> The intent of Congress is clear. The FELA was enacted to provide a source of recovery to injured employees and to compel greater safety precautions on the part of the employers. It was enacted on the assumption that co-worker tortfeasors would be essentially "judgment proof" and that legal action against such a fellow-servant would be futile. Railroad-employers are to be responsible to their employees for maintenance of a safe workplace. They may not be allowed to circumvent that duty.

<u>Henson</u>, 1985 U.S. Dist. LEXIS 21048, at *15.

13

damages from the railroad employer, a "*pro tanto*" set-off approach that credits the non-settling FELA defendant with the dollar amount of settlements received by the injured party should be used. <u>Schadel</u>, 381 F.3d at 678.   Other courts have reached a similar conclusion, applying a *"pro tanto*" set-off approach to settlements. <u>See</u> <u>Benson v. CSX Transp. Inc.</u>, 274 Fed. Appx. 273 (4th Cir. April 23, 2008);[9] <u>Krueger</u>, 2005 WL 2234610, at * 1 (citing <u>Ayers</u>, 538 U.S. at 144).[10]   The Court agrees with the reasoning in these case and, therefore, will apply the *pro tanto* set-off approach in this case.

## III.   CONCLUSION

For the reasons discussed above, Defendants Ashwood and Ketterer's Joint Motion to dismiss CSX's third-party claims against them [dkt. # 102] is **GRANTED** and

(1) upon settlement between Plaintiff and either Ashwood or Ketterer, CSX's contribution claims against the settling defendants are barred by operation of N. Y. Gen. Oblig. Law  § 15-108(b);

(2) CSX's indemnification claims against Ashwood or Ketterer are **DISMISSED;** and

---

[9] The Fourth Circuit wrote:

Joint and several liability is the traditional rule in FELA cases. <u>Norfolk & W. Ry. Co. v. Ayers</u>, 538 U.S. 135, 163, 123 S. Ct. 1210, 155 L. Ed.2d 261 (2003). Within this framework, a FELA defendant is entitled to a *pro tanto* setoff against a jury verdict in the amount of any settlement the plaintiff obtained from another party who, together with the defendant, is jointly and severally liable for the plaintiff's harm. <u>See</u>, <u>e.g.</u>, <u>Schadel v. Iowa Interstate R.R., Ltd.</u>, 381 F.3d 671 (7th Cir. 2004); <u>Hess v. Norfolk S. Ry. Co.</u>, 106 Ohio St.3d 389, 835 N.E.2d 679 (2005).

[10] As the Eastern District of Wisconsin explained:

In <u>Ayers</u>, although reduction of a damages award for settlement by other parties was not addressed, the Supreme Court in describing the final judgments stated that the trial court had reduced the damages based on the plaintiffs' comparative negligence "and for settlements with non-FELA entities," 538 U.S. at 144, with no mention that the second reduction was inappropriate. <u>Id.</u>

14

(3) The Court will apply a *pro tanto* set-off approach to any settlement amounts if Plaintiff obtains a judgment against CSX on the FELA claim.

 **IT IS SO ORDERED**

DATED:July 27, 2010


Thomas J. McAvoy
Senior, U.S. District Judge