UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAWRENCE A. MANCINI,

                              Plaintiff,

    -against-                                08-CV-933

CSX TRANSPORTATION, INC.,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Presently before the Court is Defendant's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), a new trial pursuant to Fed. R. Civ. P. 59, and a reduction of the jury's verdict to present value.

### I.    FACTS

The facts of this case were previously set forth in the Court's prior Decisions and Orders in this case, familiarity with which is presumed. This matter proceeded to trial, after which a jury rendered a verdict in favor of Plaintiff. The jury found that Defendant was 18% negligent and awarded future damages as follows:

        1.     Lost wages and fringe benefits   - $322,604

        2.     Pain and suffering               - $ 50,000

### II.    STANDARD OF REVIEW

#### a.    Motion for Judgment as a Matter of Law

As the Second Circuit has explained:

> Rule 50 enables the district court to enter judgment as a matter of law against a party on an issue only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue," Fed. R. Civ. P. 50(a), and permits the district court to do so after a jury verdict, provided a pre-verdict motion is properly renewed, Fed. R. Civ. P. 50(b).  The standard for post-verdict judgment as a matter of law is the same as for summary judgment under Fed. R. Civ. P. 56, This Is Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998), and thus "[a] district court must deny a motion for judgment as a matter of law unless, viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" Cruz v. Local Union No. Three of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154-55 (2d Cir. 1994) (quoting Simblest v. Maynard, 427 F.2d 1, 4 (2d Cir.1970)) (second alteration in original).

Nadel v. Isaksson, 321 F.3d 266, 271-72 (2d Cir. 2003).

> Where, as here, a jury has deliberated in a case and actually returned its verdict, a district court may set aside the verdict pursuant to Rule 50 only where there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." Cross v. New York City Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005).

AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 456 (2d Cir. 2009).

### b.   Motion for a New Trial

"The standard for ordering a new trial is . . . somewhat less stern than that for entering judgment as a matter of law." Id. "A district court may grant a new trial pursuant to Rule 59 even when there is evidence to support the jury's verdict, so long as the court 'determines that, in its independent judgment, the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice.'" AMW Materials Testing, Inc., 584 F.3d at 456 (quoting Nimely v. City of New York, 414 F.3d 381, 392 (2d Cir. 2005)).

With these standards in mind, the Court will address Defendant's motion.

**III.     DISCUSSION**

   **a.     Whether Defendant Was Negligent**

Defendant moves for relief on the ground that "[t]he only evidence that plaintiff introduced in support of his theory of negligence was his expert's opinion that the rear seat of the 2007 Chevy Colorado in which plaintiff was a passenger was unsafe when compared to the front seat or to seats in a Chevrolet Astro Van." Def. Mem. of Law at 6. The argument continues that: (1) Defendant cannot be held accountable for design defects in a vehicle manufactured and sold by other entities that were neither obvious nor reasonably ascertainable; and (2) there was insufficient evidence of how Defendant could have been aware of any defect in the seat.

"Under FELA, liability attaches whenever an employer breaches the statute's high standard of care, '[a]nd this result follows whether the fault is a violation of a statutory duty or the more general duty of acting with care." Tufariello v. Long Is. R. Co., 458 F.3d 80, 90 (2d Cir. 2006) (quoting Kernan v. Am. Dredging Co., 355 U.S. 426, 439 (1958)). Defendant had a duty to provide Plaintiff with a safe workplace. Tufariello, 458 F.3d at 90. Under FELA, Defendant breaches its duty of care 'if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees.'" Id. (quoting Ulfik v. Metro-North Commuter R.R., 77 F.3d 54, 58 (2d Cir. 1996)).

> The Supreme Court has instructed that a relaxed standard of proof concerning causation applies in FELA cases. The test is whether "the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury. . . ." Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 506, 77 S. Ct. 443, 448 (1957); see Gallick v. Baltimore & Ohio Railroad, 372 U.S. 108, 116, 83 S. Ct. 659 (1963) (plaintiff's evidence of causation need only be "plausible" to present to jury). The right of the jury to decide issues of fact should

> also be liberally construed. Gallose v. Long Island Railroad, 878 F.2d 80, 84-85 (2d Cir. 1989). Thus, an employer may be held liable under FELA for risks that would otherwise be too remote to support liability at common law.

Ulfik, 77 F.3d at 58.

The Court finds that the issues raised by Defendant were properly addressed to, and by, the jury. There was sufficient evidence upon which the jury could have reasonably found that Defendant was negligent. Contrary to Defendant's assertion, this is not a case of a latent design defect that was not reasonably discoverable. Similarly, this case is not limited to a defect in the design of the seat. Plaintiff did not need to prove that the seat was defective, but, rather, only that Defendant could have reasonably foreseen that the use of the seat would increase the likelihood of injury and that Defendant failed to take reasonable precautions. Ulfik, 77 F.3d at 58. Thus, the jury could properly consider whether it was reasonable for Defendant to have allowed Plaintiff to ride in the jump seat of Ketterer's vehicle considering the relative sizes of Plaintiff and the jump seat.

There was evidence in the record that Defendant had been made aware of complaints regarding Ketterer's use of his personal vehicle to transport train crews. There was evidence from which the jury reasonably could have concluded Defendant was on notice that: (1) the rear jump seat of Ketterer's vehicle was too small for adult men to safely and comfortably ride in; and (2) employees felt compelled to ride in this seat (rather than wait for the Quad A van) for fear of being found to be insubordinate. This was sufficient for the jury to conclude that Defendant was on notice of a potentially dangerous (or unreasonable) situation.

There also was evidence demonstrating that, in response to the complaints, Defendant did nothing. Defendant did not look into the condition of the rear seat in Ketterer's

vehicle, speak with Ketterer concerning the use of his private vehicle, or adopt a policy mandating the use of the Quad A vans.[1] The jury was free to conclude that an inspection of Ketterer's vehicle may have revealed that Plaintiff did not properly fit in the rear jump seat or that the rear jump seat was otherwise improperly sized for an adult male. The jury similarly could have reasonably concluded that notice of improperly sized seats would cause a person of reasonable caution to be concerned whether the seat was providing adequate safety and take reasonable actions in response thereto. It does not require expert testimony to conclude that the possibility, or extent, of injury in a motor vehicle accident is increased by sitting in an improperly sized seat. From the foregoing, the jury could reasonably have concluded that Defendant's failure to inspect and act constituted negligence that contributed to Plaintiff's injury. The Court, therefore, finds that this does not warrant judgment as a matter of law or a new trial.

### b. Whether the Court Improperly Admitted Expert Testimony

Defendant next contends that it is entitled to judgment as a matter of law or, in the alternative, a new trial because the Court improperly admitted the testimony of Plaintiff's expert, Ken Brown, and evidence concerning the contract between Defendant and Quad A, the entity that provided van services for Defendant's employees. According to Defendant, the admission of this evidence prejudiced it and confused the jury.

The Court finds that the testimony of Ken Brown was admissible to help establish breach of the duty of care and causation. Specifically, Brown testified as to how and why the size and positioning of the rear jumper seats were related to Plaintiff's injuries and how the

---

[1] There is no dispute that the Quad A vans had adequate and proper seating.

seat did not provide adequate support for a rear impact. The testimony was based upon his analysis of the size and shape of the seat in Ketterer's vehicle and the manner in which it supported an adult, human body and a comparison of that seat to the seats in the Quad A vans. Thus, the testimony was not based on conjecture or speculation.

The Court also finds that evidence concerning the Quad A contract was admissible. That contract had certain safety specifications set forth therein. It was for the jury to determine whether those safety specifications were matters Defendant thought important to safely transport its employees.[2] The jury also could consider the contract to determine the reasonableness of transporting employees in a private individual's vehicle (which was not subject to Defendant's contracted safety standards) rather than using a contracted van service (which was subject to Defendant's contracted safety standards). The jury was properly advised of reasonable alternatives available to Defendant for transporting its employees, including Plaintiff, that it could have considered had it responded to the complaints concerning the use of Ketterer's private vehicle. The Court, therefore, finds that these grounds do not warrant judgment as a matter of law or a new trial.

### c. Jury Award for Future Wages and Fringe Benefits

Lastly, Defendant moves for a reduction in the jury's award for future wages and fringe benefits on the ground that the jury failed to discount the future lost earnings to present value and reduce them for taxes. The basis for Defendant's contention is that the jury's

---

[2] The Court disagrees with Defendant's premise that a third-party contract is insufficient to establish the applicable standard of care as to Defendant's employees, particularly when the third-party contract is designed to provide benefits or services to those employees. See e.g. Compagnie Nationale Air France v. Port of New York Authority, 427 F.2d 951, 955 (2d Cir. 1970). The jury could properly consider the contract is determining the applicable standard of care.

award for future damages ($322,604) is the exact same amount calculated by Plaintiff's expert, Ron Reiber, for the years 2011, 2012, and 2013, which amount admittedly was not discounted to present value and did not account for taxes. Plaintiff responds that determining precisely how the jury came up with the $322,604 amount would require the Court to speculate as to why the jury did what it did. Plaintiff posits that the jury may have discredited Reiber's proposed discount or tax rate, or determined that Plaintiff would have worked for a longer period of time at a lesser salary.

Although mindful of its obligation not to interfere with the province of the jury, the jury's finding of an amount that exactly coincides with the calculations of Plaintiff's expert for the years 2011-13 is simply too coincidental to ignore. This is particularly so in light of the facts that there was no competing evidence concerning the appropriate discount rate, the applicable tax rate, or other jobs or salaries. The Court is, therefore, left to conclude that, although the jury was properly instructed, it did not follow the instruction on discounting and accounting for taxes. This presents the possibility of a seriously erroneous result or a miscarriage of justice warranting a new trial.

It is for a jury to properly determine damages, including the applicable discount and tax rates. Accordingly, unless Plaintiff agrees to accept the amount of $259,592[3] as his total future lost wages and fringe benefits, the Court will order a new trial on the issue of damages only.[4]

---

[3] This figure was calculated using Plaintiff's expert's findings, which appear to have been adopted by the jury, and discounted using the assumptions used by Plaintiff's expert - a 20% tax rate and a 2.7% discount rate.

[4] There is no basis for disturbing the jury's determination on the issue of liability.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's motion [Dkt. No. 140] for judgment as a matter of law or, in the alternative, a new trial is DENIED IN PART and GRANTED IN PART. Defendant's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) is DENIED.  Defendant's motion for a new trial is GRANTED insofar as the Court will hold a retrial on the issue of damages unless, within fourteen days of the date of this decision, Plaintiff agrees to accept $259,592 in future lost wages and fringe benefits.  In all other regards, Defendant's motion for a new trial is DENIED.  Defendant's motion to modify costs [Dkt. No. 143] is DENIED because it was not filed within seven days of the date the Clerk taxed the costs or the Clerk entered the taxation of costs on the docket.[5]  Fed. R. Civ. P. 54(d)(1)("On motion filed within the next 7 days [after the clerk tax costs], the court may review the clerk's action.").

IT IS SO ORDERED.

Dated: May 4, 2011

_____
Thomas J. McAvoy
Senior, U.S. District Judge

---

[5] Plaintiff submitted his bill of costs on March 15, 2011.  Inasmuch as Defendant was served a copy of the bill of costs, it was aware of the request.  The Clerk taxed the costs on April 5, 2011, more than fourteen days later.  Defendant moved to modify the costs on April 13, 2011, more than seven days after the taxation of the costs was docketed.  The Court makes no determination when the seven day period begins to run (when the clerk taxes the costs or when the taxation of costs is docketed) because Defendant's motion was untimely regardless of which triggering date is used.  Moreover, because Defendant offered no explanation why its motion was untimely, the Court finds no reason to consider the untimely motion.